Excuse me, if it pleases the Court. My name is Thomas Almey. I'm using my voice, but I represent Service Management Systems, well, the appellant here, also across the pay leave, I guess. The real issue, the bottom line issue to what we're looking at here today and what we're talking about in this case, is really whether or not the insured is entitled to get what it paid for. That's really the bottom line of what's going on. There's no question involved in this case with regard to whether or not this was the underlying claim was a covered event. It clearly was. There is, from our perspective at any rate, no case law supporting the steadfast position that there should be some sort of exception to the Notice of Prejudice Rule that applies to their policy in this particular case. They are essentially asking this Court to create a new exception under California law. Well, you know, this case raises kind of some interesting insurance issues under California law. You know, I couldn't find a California Court of Appeal opinion or a California Supreme Court case that really addressed this particular notice reporting clause or endorsement provision. There is no case. In this particular context. And what you rely upon is sort of the overall writing public policy concern that's general notice provisions. That's correct. And that's kind of what the district court did here. But isn't that a little bit different than what's going on here? No, I don't think so. Why not? I mean, the part you refer to as a hybrid occurrence policy. Why are you referring to it as a hybrid policy? No. There's no such thing as a hybrid occurrence policy. I know. That's steadfast. I know. And there's no such thing. I mean, if you go through all the ISO stuff, it's not, there's no such thing as a hybrid occurrence policy. What you've got here is an underlying, you have, in essence, an excess layer of coverage, which is based on an occurrence as a triggering event, above a self-insured retention, which has certain requirements as to the claims that fall within the self-insured retention. Isn't that how the district court saw it? Yes, I believe he did. And I think that's correct. Essentially, this is clearly an occurrence policy, including the SIR endorsement. It says it right on its face. And it differentiates itself. If you look at the endorsement itself, the SIR endorsement, it actually has a provision where it can go either way. It can be a claims-made policy or it can be an occurrence policy, depending on which one and how it's addressed. In this particular case, if you look at the It is. And you've raised a good question, I think, with regard to are there any cases that address this kind of this reporting, the use of the word reporting and its reporting requirements. And no, as far as I know, there is no case that is directly on point and addresses it head-on. However, I think that, in fact, they have. I think the cases that talk about the notice and the cooperation clauses from which the notice to at least try to understand in my own mind was, is there any significant difference between the notice requirement and the reporting requirement? Are they both essentially the same? Why even have a difference? What is that all about? I don't think in some respects they are. It depends on how you use the notice and requirements. The case law kind of lumps the notice and cooperation clauses together. The reporting requirements in this one, in the E section of the endorsement, are essentially akin to the cooperation clauses. They are providing additional information that is needed administratively or to facilitate the handling of the claim. The courts that have talked about this, take a look at whether or not these requirements have a triggering effect on coverage. If you look to the, first of all, in the claims, if they trigger coverage in some respects or extend the coverage to a claim that would not otherwise be covered, then they look at those differently. In this case, the reporting requirements that are in the E section are, I think the Textron case refers to these as administrative aids to the handling of the claims. And I think that's a good characterization. That's what the notice requirements, well, the notice requirements, they trigger, well, not, it depends on, in an occurrence case, they don't really trigger the coverage. The coverage is triggered by the occurrence itself. With these other things where they're giving notice, the cooperation clause, and in this case, the reporting clause, they're providing the insurance company with additional information to handle the claim. Is the reporting requirement intended to sort of cut off the tail, you know, the cases dragging along? In a claims domain policy, yes. That's exactly what its purpose is. And that's why, in those cases, and that's why the courts have created an exception for the claims domain policy. They can't, an insurance company can't do that in an occurrence policy? No, that's, I mean, that's the fundamental difference between the occurrence policy. If you do that, now it's a claims made policy. Well, they said 45 days, and then 45, every quarter they had to, you know. But you don't add any coverage with those things. All they're doing is reporting. They're saying, okay, they aren't even talking about an occurrence. That's correct. Right? But because there's an SIR, it's just like having an underlying layer or an excess layer of coverage. At some point, there may be some claim that rises into the next level, and that's what they want notification of. But it's not, it's not that there was a claim made and you had to report it that's triggering the coverage, which is the difference between an occurrence policy and a claims. This is just so that when the policy period ends, the insurance company knows. So it consents with reserves. That's exactly right. It doesn't affect the fundamental coverage. It isn't like you can add on another claim beyond the time. And that's how the courts deal with this issue. Try as they might, it's your position, they can't ever legitimately negotiate this clause. You acknowledge that in the event of noncompliance, we shall not be required to establish prejudice. Resulting from the noncompliance but shall be automatic relief of liability with respect to the claim. The case law, I mean, in terms of the notice. That's just nonsense. They just can't do that in an occurrence-based policy. No, I think there's actually, I mean, there's two ways to go about this. In an occurrence-based policy, basically, in terms of the notice prejudice rule, that's correct. That's because the notice prejudice rule is grounded in public policy, and that trumps your provision in the insurance policy. And if you look at the case law, specifically the Hanover case, they specifically say that. Because some of the earlier policies involving notice and cooperation had those kinds of clauses in them as well. And they said, no, that doesn't make any difference. So the answer to half your question is no, it doesn't matter. So no public policy trumps that. However, the insurer, if there is a breach of these reporting requirements, they have an alternative available to them. Remember these things, they aren't specific to this claim. They can go out and say, hey, you breached, you know, one of the requirements, and so we're going to cancel this policy. Then there's notice requirements and other things on there that go along with that. It's not like that clause can't be put to use. They can look to the insured and say, you can just cancel the policy. One of the, when I'm working on this case, one thought that occurred to me is, is this the kind of case we should certify to the California Supreme Court? I mean, is the issue significant enough? I don't believe so, because I think it's clear. I think the law is clear. I think that as a practical matter, these reporting requirements are analogous to the notice and cooperation clauses, that there isn't a real issue. I will concede that the California Supreme Court or any other government has not addressed it this prime in those words. Did I understand that there was a court of appeals decision that addressed it and found that the notice prejudice rule applied, but then it went to the Supreme Court? Supreme Court dismissed the appeal, and that opinion is now no longer citable? I'm not sure what case you're referring to. Well, I mean, it wouldn't be citable, but it did roll your way. If it's there, I wish it goes my way. I'd like to have it. Sarah, I am CERA, Group Versus Liability Mutual Insurance Company. It was an unpublished, it was originally published in the California Supreme Court. It had to do with pollution and all that stuff, but buried in there was a discussion about the reporting requirement. I guess I'm not familiar enough with why the California Supreme Court would do that. I mean, if it means that it doesn't want to decide this issue, or it feels that it's already decided. I just really don't believe there's an issue, because I do think, because if you take a look at the reporting requirements themselves, it's very clear that they don't impinge on the actual coverage. The other example that Steadhast has brought forward is the voluntary payments clause of one of the insurers, the Insua case. In that one, they went off and said that pre-tender voluntary payments, that the rule doesn't, the notice of prejudice rule doesn't come into play. And they said that's because it doesn't involve the insurance company trying to escape all liability on the coverage. So it goes back to the fundamental question of whether or not we are affecting the entire coverage. If the coverage is being challenged, it goes back to the public policy in California. We don't want the insurance companies taking a technical violation and avoiding coverage unless there's a showing of actual prejudice. So it's a pretty reasonable position, actually. So I think that, as a bottom line, is I think the Supreme Court of California is, I mean, they've come out, they're out there with their opinions on that, and there's been a number of, obviously, lower court opinions on it. All consistently saying, in the context of these where you've just got technical violations of reporting provisions. Then the notice of prejudice rule applies. Do you want to address the breach of the duty of good faith and fair dealing? I do. I believe, with regard to actually, let me address, there's three involved that I would, I have not a lot of time here to at least mention them, is that the, we've got the implied covenant of good faith and fair dealing, unfair trade practices, and the waiver of services. I would say that in each of those cases, the judge below, in a very abbreviated fashion, addressed those. He said, basically, there wasn't enough factual basis to support them, which, factually, we disagree. I think he did an outstanding job in his analysis of the notice of prejudice rule, but didn't spend a great deal of time on these issues. With regard to the implied covenant of good faith and fair dealing, it's a really simple thing, actually. The benefits are due and the policy are withheld, and then the question is whether they were withheld for either unreasonable reasons or without proper cause, either or. The standard there is whether or not there's an objective reasonableness in terms of their denial. What's your argument that they were unreasonable in their denial? One is the Section 1, it's the Section E that we talked about earlier. It's clear that it only applies, the requirements of it are cumulative requirements, they're only making reporting requirements concerning the status of all the claims that are being covered. And yet, what Steadfast is saying, is taking a reasonable saying, is, you know, say there's 100 cases. This is a janitorial service with more slip and falls than they care to admit. You know, you've got 100 cases or 20 cases on this thing that are all in this cumulative report. If they misrun the report, Steadfast has taken the position, we can cancel all the policies. Boom. And we don't have to show any prejudice. We can just do that. I think that's clearly contrary to the public policy and unreasonable. It just can't work that way. It's clearly unfair on its face. The second part would be, with regard to the unreasonableness, is that in our view, at any rate, the law is settled. And they have taken, while they're arguing that there's some exception, and they've argued, you know, built some case argument off the case law, it's pretty straightforward. There is no case supporting their position, other than by argument. I think the law is settled. Is this notice prejudice rule, is it applied in other states? I mean, is California unique in having this notice prejudice rule, or is it a widespread rule of law? It's clearly not unique. In my opinion, it's widespread. To be honest, I don't know how many jurisdictions have got it and what permutations are, but it's not unique, clearly. I'm just wondering if this insurance company, Steadfast Insurance Company, maybe issues policies that has this kind of self-insured retention analysis, and in other states where it wouldn't be against public policy to adhere to the notice reporting requirements. I think that's probably true, because I know there are states, I can't name them, but I know there are states that don't have the rule. Again, unfair trade practice, the standard is examination of the impact on the victim, balanced against their reasons, or the reasons of their cancellation. We don't believe they've given us good reasons. There's clear impact on our client, SMS. They've denied their insurance coverage at the last minute. And the same with the Estoppolan waiver. The insurer acted, in our view, in such a manner as to cause the insurer to reasonably believe that it had relinquished its right, and that they relied on that to their detriment, because of what happens by them taking over the defense and then basically leading down the Primro pass with regard to having one mediation and then bailing out after the first mediation and leaving them to their devices. Kelly Beck, representing Appley and Cross Appellant, Steadfast Insurance Company. Counsel asked the question, says this is really about whether an insured is entitled to get what it paid for. What the insured negotiated and paid for was a policy with an SIR and an SIR endorsement in unambiguous language, said not only that they'll comply with these reporting requirements, which they repeatedly violated, including the quarterly reporting, but expressly said this policy does not require the insurer to prove prejudice if you violate the provision, as a condition of proceeding to coverage. That's what this case is about, is whether California has a public policy that bars sophisticated or big companies from negotiating a contract with unambiguous, explicit limitations of coverage. I don't think we should be looking at claims made in occurrence cases as much as the California Supreme Court authority that the insurer is entitled to. You know, this freedom of contract, to contract to anything, even things that might violate public policy, went out with the locker era of cases. I mean, you can't, we know that there are public policy limits on what people, even big companies, are able to agree to, right? The question is whether that public policy in California is, exists and should be applied in this particular case. I agree, if you mean by, is there a public policy that prevents a carrier from imposing the notice reporting requirements on the insurer to prove precedent to coverage without requiring proof of prejudice as a defense? Is there that public policy? The cases that have applied and developed the notice prejudice rule have not said the public policy prevents the parties from contracting. They've arisen in the context of the typical CGL form notification provision, just like this policy has in the body, under the Commercial General Liability form that says you'll give notice as soon as practicable. Right, but it could be argued, as the district court found, that you're including that provision in the SIR endorsement as an attempt to circumvent the California public policy that will not uphold the notification unless you also show prejudice. If the court were to hold that there is a public policy that you cannot impose reporting requirements on an insured, then, yes, you would hold that this is a technical violation is insufficient to overcome the notice prejudice rule. This is not a technical violation. Well, your counsel for the plaintiff said this is just nothing more than a technical violation. That's all it is. It's a repeated violation of a contract that prescribes exactly what happens. I had a question to counsel about what is so significant about the reporting requirement? You know, I stand back and look at this. I'm not the underwriter, and, frankly, there isn't case. You're their lawyer. You've been thinking about this case for a lot longer than any of us have. So you're deeply involved in insurance litigation and insurance law. So tell me why the reporting requirement is so significant. Why is it so different than the notice requirement? What do you get for it? I'll tell you why. Because this is an excess policy. It's written with a primary CGL form, but they put an endorsement on it that says we're excess above not a particularly high SIR, because this is the type of an insured that has repeated claims and repeated exposures and can have many potential claims around the world. And they said since we're really taking the risk and charging the premium as an excess carrier, we don't want to have to open all these claim files and adjust all these little claims all over the country. So you insured, you're going to do the claims adjusting that a primary carrier would have done. And primary carriers normally have reporting, have proof of claims, have loss ratios, have the information that we as an excess carrier could just look to them to give. And that's what the endorsement, I think, does. But it doesn't change the fact that you're only covering occurrences within the definition of the CGL policy. You're not, it's not expanding the nature of the claims that you're going to cover in any way, is it? I agree, Your Honor. Yeah. And the reason this typical CGL policy, say a first layer, does, it's written by the insurance industry and it's a common form. And it does not have that provision in probably because it doesn't comply with, that you added into the self-insured retention, because it doesn't comply with the law, the public policy of many states. I don't agree with that, Your Honor. Okay. I don't agree. I have never seen any reported decision in any jurisdiction that says it is against public policy to put notice, put a reporting requirement as a conditioned precedent to coverage without proof of prejudice. And let me give you an illustration of why I can prove it's not against public policy in California. If you could not convert an occurrence coverage to this policy by putting a limitation that, okay, we cover occurrences, but if you don't report, per this reporting endorsement, you're not going to have coverage, then how could you endorse a claims-made policy? You can buy a claims-made policy that has a claims retro date with the inception date of the policy. And it can have a claim made and reported with the reporting feature, 90 days after the policy expired. If there's a public policy that says you cannot do that, then claims-made policies, claims-made and reported policies could never have been upheld. No, that's because the nature of the policy is different. The cases in California are legion on the question of notice, that if the insured violates the notice provision, the insurance company must show prejudice in order to do legion. In every one of those cases is a condition that says you'll give notice as soon as practicable and does not say what practicable is or the effect of failing to give notice. That's why this contractual provision is unique. And you're right. There is no reason I can't find a reported decision on this contractual provision in any jurisdiction, let alone... Is the form subject to approval by a regulator? Yes. I can say that without knowing the underwriting, because you can't sell a policy in a State that hasn't been approved by... The insurance commissioner in the State of California set the insurance policy as a matter of public policy? I think I heard your question. And there is, I recall seeing some authority for the fact that if it is accepted for filing, there's a presumption of some validity, but it doesn't go very far, frankly. And I'm not trying to oversell that, because frankly, you know, we've avoided the choice of law issues here. I don't even think this policy was issued in California, but because there's no conflict of laws... That's the only question I had, was whether it was even issued in California. But, okay, that's not an issue in the case. Let me just ask you, though. Do you have an alternative argument that the insurance company was prejudiced by the late notice of this claim? On the... Frankly, Your Honor, on the burden... It is speculation. We can't roll back the clock. I don't know what the case could have settled for at the beginning. I don't know what they could have done. And that just, to me, goes back to why it is reasonable to be negotiating for a You will do the reporting that we expect as a conditioned precedent to coverage, or there will be no coverage. Because how are you supposed to prove it? No, I don't know it wasn't, that this wasn't a good settlement, that it wasn't as good as it could have been. But I don't know it was. I mean, the initial demand, without any discovery being done, was $250,000. If everyone thought there were going to be sweepsheets that would vitiate liability, the plaintiff might have thought that, too, and he might well have taken a substantially lesser amount. But if you're holding the carrier to the notice prejudice rule, so to speak, despite the fact it says prejudice isn't required under this policy, under that line of case law, I don't think you would meet the burden of prejudice, candidly. Let me ask you this. Is this issue significant enough that we ought to ask the California Supreme Court to take a look at it? The issue is... I mean, is this kind of endorsement common in California? I mean, is this kind of a unique thing? The issue is significant. It's important to my client. It's an endorsement they use. But is it significant in California? I've never seen a reported case with it. I don't know of another California case. Frankly, I think most sophisticated insurers comply with the reporting requirements in their SIR endorsements. So we don't get to this situation. When you ask about should we certify it to the California Supreme Court, I don't think there's any question but the California Supreme Court that decided Rosen, that said collapse, you can change the definition to actual fall down in pieces. We interpret the language of the contract when it is explicit and clear. There's no countervailing public policy consideration that's been recognized. I'd love to be in front of the California Supreme Court on the issue because I'm confident they would agree. I don't find any ambiguity in this contractual provision. That's the same court that held under Foster Gardner. Suit means suit. You know? I ask that question because I've been on two panels over the past year where we, in insurance cases where I didn't think they were all that significant but the court took them. Well, I don't know. I don't know. You know, I don't speak in the world of insurance coverage or forms or litigation. I'm just curious whether or not it's. I think the question. Something they might be interested in. The question, to the extent it is a thoughtful and serious question, too, just underscores, I've been talking about the cross appeal, not the appeal. To maintain my client's denial of coverage by just reading their own contract was bad faith or an unfair claim practice or an unfair business practice I think is borderline absurd. Well, you know, it seems to me that Judge Matz kind of sliced this baby correctly. I mean, he is. I don't know whether it's an important enough issue or whether the Supreme Court would take it. But, you know, in applying the law, it does, at least to me, seem pretty clear that you would have to show some prejudice in California. But, I mean, you didn't. I mean, he went. He didn't go for the duty of good faith and fair dealing or the 17200. And, gosh, I don't know. How much money is at issue here? Why didn't you guys just settle it at this point? We paid the claim after the judge ruled. We paid it. Their appeal is to try and claim they're entitled to grant attorney fees for suing to recover benefits due under the policy. And, frankly, we didn't know the claim, and we shouldn't have had to pay the claim. But you did pay the claim. So does that make this moot? Well, no, it doesn't, because the payment was there was an agreement from counsel that they would reimburse if it was determined that there was no coverage. But we went ahead and before a notice of appeal or even before our notice of appeal was filed, we had paid the claim. How much was the claim? I mean, it's not that much. Why couldn't you guys tell? It was $184,000. $184,000 less the $25,000 deductible, approximately, so $160,000. So you have to take this all the way to the Ninth Circuit? I mean, that kind of means the attorney's fees are probably more than that. What the Ninth Circuit opinion is going to do in this case is tell us whether this endorsement is a worthless piece of paper. So that's important to you, to find out whether in California it will be enforced? Well, anything we say about California law is just, you know, hey, you know, that's these three judges over there in the Ninth Circuit. What they say is not binding on us. That is absolutely true. But since there's no case anywhere in the country on this, I can assure you that whatever you have to say about this endorsement. Isn't there a case out of Rhode Island called Textron? Yeah. I like that case. And that is the one. I use the term occurrence hybrid because it comes from those two cases. And really, this is an occurrence policy, but there's a different feature by this endorsement. No, it's just a regular occurrence policy that happens to be excess of a self-insured retention. I think you're an experienced insurance litigator to know that. Yes, but it has a limitation that a typical occurrence policy does not. Exactly. That's the whole point. That's what the case is all about. That's what the case is all about. Can they do that? The Textron and the Matador petroleum case, they're good examples of how, hey, yeah, there is a unique contractual limitation in both of those policies, which were essentially occurrence policies, but they put a special unambiguous limitation on it. And if you step back here, there is no argument of an ambiguity. There is no argument that there was not multiple breaches of the reporting provisions in the policy. There are no arguments made that this is a case for an exceptional equitable excuse or deviation, because, you know, it's not like there was a recent case that came out, Root, that said, you know, the attorney got notice, but it was ambiguous. He didn't know if it was serious. It was three days before his policy expired. He didn't learn it until two days after it expired and immediately notified his insurance company. And the insurance company had never offered him a 60-day reporting tail, and the court said, you know, that's unique. That's harsh. Equity is going to step in here and give an excuse. This isn't that kind of case. I mean, there may be a hard case where equity might say this is too harsh, but this is not it. There are, you know, you could make a laundry list of contractual breaches of the endorsement. So if the court were to say you have to prove prejudice from failing to comply with the reporting conditions, then what good is the endorsement? I mean, what the reporting conditions are meaningless, because if you get a notice of a claim, the insured could always say, you could have investigated it yourself. You could have done your own reporting. Prove that you were prejudiced. I think we understand the argument, and you're over your time. Thank you, Your Honor. If anybody has any other questions. Okay. Thank you very much, counsel. Thank you. Service Management Systems v. Steadfast Insurance Company will be submitted.
judges: Beezer, Wardlaw, Paez